UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

**UNITED STATES OF AMERICA**             **CRIMINAL NO. 6:23-CR-00290**

**VERSUS**                                **JUDGE DAVID C. JOSEPH**

**SHANONE CHATMAN-ASHLEY**                **MAGISTRATE JUDGE CAROL B. WHITEHURST**

## ORDER

Before the Court is a RENEWED MOTION FOR JUDGMENT OF ACQUITTAL (the "Motion") filed by Defendant Shanone Chatman-Ashley (hereinafter, "Chatman-Ashley" or "Defendant"). [Doc. 73]. The Motion is opposed by the government. [Doc. 75]. For the reasons set forth below, the Motion is DENIED.

### BACKGROUND

On December 12, 2023, a grand jury in the Western District of Louisiana returned an Indictment charging Chatman-Ashley with five counts of Health Care Fraud for defrauding Medicare in violation of 18 U.S.C. §§ 1347 and 2. [Doc. 1]. Medicare is a federal health insurance program that provides benefits to individuals who are 65 years and older or disabled. [Doc. 1, p. 1]. Chatman-Ashley was a licensed nurse practitioner in Louisiana who applied for and obtained a Medicare provider number. *Id.* at p. 4. Upon obtaining a Medicare provider number, Chatman-Ashley worked as an independent contractor for several telemedicine companies to provide telehealth services to Medicare beneficiaries. *Id.* at p. 5. The Indictment alleges that Chatman-Ashley ordered durable medical equipment ("DME") for beneficiaries whom she did not examine and who had not been seen by a medical provider. *Id.*

Accordingly, the Indictment charged that Chatman-Ashley knowingly and willfully executed, and attempted to execute, a scheme and artifice to defraud Medicare. *Id.* The Indictment further alleged that Chatman-Ashley knowingly and willfully submitted, and caused to be submitted, five specific fraudulent claims for payment from 2018 to 2019 in the Western District of Louisiana. *Id.* at pp. 9-10. A jury trial commenced on April 28, 2025. After the government rested its case, Chatman-Ashley moved for a Judgment of Acquittal, which the Court denied. On May 1, 2025, the jury unanimously convicted Chatman-Ashley on all five counts of Health Care Fraud. [Doc. 65].

Chatman-Ashley now renews her Motion, arguing that there was "absolutely no evidence presented" that she "acted knowingly and with the specific intent to deceive" Medicare. [Doc. 73-2, p. 6]. Specifically, the Motion asserts that while government witnesses Michelle Cuttino, Jean Wilson, and Charlene Frame all admitted to committing fraud, the government failed to present evidence that Chatman-Ashley acted in concert with these individuals. *Id.* at p. 7. And Chatman-Ashley avers that because she did not know she was committing fraud – as evidenced by her supervisors' reassurances that she was not breaking the law – she lacked the necessary intent for her conviction. *Id.*

The government responds that it was not required to prove that Chatman-Ashley entered into an agreement to commit fraud with any individual because she was not charged with a conspiracy offense. [Doc. 75, pp. 4-5]. And the government maintains that it otherwise presented sufficient evidence of the Defendant's intent to defraud at trial. *Id.* at p. 5.

## LAW AND ANALYSIS

"A motion for judgment of acquittal challenges the sufficiency of the evidence to convict." *United States v. Lucio,* 428 F.3d 519, 522 (5th Cir. 2005), *quoting United States v. Medina,* 161 F.3d 867, 872 (5th Cir. 1998). Rule 29 of the Federal Rules of Criminal Procedure mandates that the court "enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). "A defendant may move for a judgment of acquittal, or renew such a motion, within 14 days after a guilty verdict or after the court discharges the jury, whichever is later." Fed. R. Crim. P. 29(c)(1).

"[T]he relevant question is whether, after viewing evidence in light most favorable to prosecution, any rational trier of fact could have found the essential element of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). *See also United States v. Gas Pipe, Inc.*, 2021 WL 1811752 (5th Cir. May 6, 2021) ("Evidence is sufficient to support a conviction so long as 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"). A "'jury is free to choose among reasonable constructions of the evidence,' even when certain evidence conflicts or suggests innocence." *United States v. Shoemaker*, 746 F.3d 614, 619 (5th Cir. 2014).

Health care fraud is committed when an individual "knowingly and willfully execute[s] or attempt[s] to execute a scheme or artifice [] to defraud any health care benefit program." Pattern Crim. Jury Instr. 5th Cir. 2.59 (2024). To act "knowingly … means that the act was done voluntarily and intentionally, not because of mistake or accident." *Id.* The defendant must have acted with "specific intent to defraud,"

which means the "defendant acted knowingly and with the specific intent to deceive, ordinarily for the purpose of causing some financial loss to another or bringing about some financial gain to the defendant." *Id.* However, "proof of knowledge and specific intent to defraud … may be inferred from circumstantial evidence." *United States v. Willett*, 751 F.3d 335, 340 (5th Cir. 2014).

The Court finds that sufficient evidence was adduced at trial to show that Chatman-Ashley acted knowingly with the specific intent to defraud Medicare. The government presented substantial evidence that Chatman-Ashley signed thousands of unnecessary DME orders for patients she never evaluated or examined, and that she received $60,000 in illegal kickbacks as a result. The following constitutes only a portion of the evidence introduced at trial:

To begin, the government offered evidence about the electronic medical record systems used by the telemedicine companies, DMERx and DCx, and established that Chatman-Ashley was able to electronically sign DME orders. Moreover, the jury heard testimony that when a provider applies for a Medicare provider number, they agree to abide by all Medicare rules and regulations. Specifically, the jury was informed that Medicare requires all orders to be medically necessary, a determination that requires a physical exam for prescribing knee braces and at least an audiovisual consultation for orthotic braces. *See United States v. Willett,* 751 F.3d 335, 339 (5th Cir. 2014) (knowledge of fraudulent upcoding attributable to defendant because of signature on company's Medicare provider application that obligated the company to adhere to Medicare's rules and regulations).

The records signed by Chatman-Ashley certified that she physically examined the patients and, in some cases, performed orthopedic tests, but testimony from patients and relatives confirmed they never interacted with her. Likewise, evidence offered at trial established that only one percent of Chatman-Ashley's DME orders were billed with office visits, suggesting no prior patient relationship. And an analysis of her phone records by Agent Gagliano indicated she never spoke to patients on the phone. *See United States v. Anderson,* 980 F.3d 423, 431 (5th Cir. 2020) ("There was evidence of multiple occasions in which BCBS was billed for hearing aids for individuals who were never tested at all … Accordingly, the jury could have reasonably inferred that the Andersons acted with the requisite criminal intent based on the prosecution's presentation of falsified client files.").

Additionally, the government presented evidence showing a strong correlation between the timing of Chatman-Ashley signing DME orders and her receipt of payments from the relevant telemedicine companies. *See United States v. Barnes,* 979 F.3d 283, 303 (5th Cir. 2020) (financial motive to falsify certifications is circumstantial proof of knowledge for a conviction of health care fraud). And the jury heard evidence that many patients were prescribed an unusual number of braces: 1,174 beneficiaries were prescribed two to three braces, 312 beneficiaries were prescribed four to five braces, and 20 beneficiaries were prescribed six to eight braces. Lastly, evidence was presented that Chatman-Ashley had a high number of claims of this nature when compared to other providers. *See Barnes,* 979 F.3d at 303 (statistical evidence that provider billed certain diagnoses with greater frequency

than other providers is circumstantial proof of knowledge for a conviction of health care fraud).

Lastly, Chatman-Ashley's argument that she was assured of the legality of the process also fails. An investigator for Blue Cross and Blue Shield of Louisiana testified that Chatman-Ashley told her that she believed her activities for Jean Wilson's company were fraudulent. The case agent likewise testified regarding several inculpatory statements made by the Defendant during a non-custodial interview. Additionally, government witness Charlene Frame testified that providers would have noticed red flags if they had followed the proper procedures. The Court therefore finds that the government presented sufficient evidence for the jury to conclude that the defendant's fraudulent intent was proven beyond a reasonable doubt.

## Conclusion

Based on the foregoing reasons, Chatman-Ashley's Renewed Motion for Judgment of Acquittal [Doc. 73] is DENIED.

THUS, DONE AND SIGNED in Chambers on this 4th day of June 2025.

_____
DAVID C. JOSEPH
UNITED STATES DISTRICT JUDGE