**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL NO. 6:23-CR-00290**<br>**CIVIL NO. 6:26-CV-03028** |
| **VERSUS** | **JUDGE DAVID C. JOSEPH** |
| **SHANONE CHATMAN-ASHLEY** | **MAGISTRATE JUDGE CAROL B. WHITEHURST** |

# RULING AND ORDER

Before the Court is a MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE UNDER 28 U.S.C. § 2255 (the "Motion") filed by *pro se* Petitioner Shanone Chatman-Ashley ("Petitioner" or "Chatman-Ashley") on August 11, 2026. [Doc. 100]. The Government filed a Response on October 8, 2026. [Doc. 106]. After considering the arguments of the parties,[1] the record, and the relevant case law, the Motion is DENIED.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On December 12, 2023, a federal grand jury returned a five-count Indictment against Chatman-Ashley, charging her with health care fraud in violation of 18 U.S.C. §§ 1347 and 2. [Doc. 1]. On May 1, 2025, after a four-day trial, a jury found Chatman-Ashley guilty on all five counts. [Doc. 65].

---

1 The Court determined that no evidentiary hearing on the Motion was required. "When the files and records of a case make manifest the lack of merit of a Section 2255 [motion], the trial court is not required to hold an evidentiary hearing." *United States v. Hughes*, 635 F.2d 449, 451 (5th Cir. 1981); *see also United States v. Reed*, 719 F.3d 369, 373–74 (5th Cir. 2013). An evidentiary hearing on a § 2255 motion is required "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b).

A preliminary presentence investigation report ("PSR"), issued on June 26, 2025, provided that the amount of Chatman-Ashley's intended loss was $5,167,118.15. [Doc. 77, ¶¶ 11-12]. After a two-point increase for her role as a person in a position of public or private trust, and a two-point reduction because she was a "Zero-Point Offender," Chatman-Ashley's total offense level was 26. *Id.* at ¶¶ 25, 28. Her criminal history category was I, and, therefore, the guideline imprisonment range was 63 to 78 months. *Id.* at ¶¶ 34, 55. The amount of loss for purposes of restitution (the actual amount paid by Medicare) was $2,291,587.26. *Id.* at ¶ 70. These findings remained unchanged in the final PSR issued on September 4, 2026. [Doc. 86].

Chatman-Ashley's attorney, Harold Register, III, lodged 11 objections to the PSR. [Doc. 80-1, Amended Addendum to the Presentence Report]. Objections 1 through 6 were factual objections,[2] and Objections 7 through 11 were objections to Chatman-Ashley's offense level computation.[3] The Court addressed all 11 objections

---

[2] Specifically, Chatman-Ashley objected to: (i) the attribution of more than $2,000,000.00 in false and fraudulent claims to her (Doc. 77, PSR, ¶ 8); (ii) the allegation that the beneficiaries were solicited in person or through telemarketing (*Id.* at ¶ 9); (iii) the allegation that Chatman-Ashley concealed and disguised a scheme by preparing, or causing to be prepared, false and fraudulent documentation (*Id.* at ¶ 10); (iv) the alleged Billed and Paid Amount due to Chatman-Ashley's fraudulent billing to Medicare (*Id.* at ¶ 11); (v) the amount of Chatman-Ashley's "intended loss" as well as Medicare's actual loss (*Id.* at ¶ 12); and (vi) the estimate of restitution in the amount of $2,291,587.26 (*Id.* at ¶ 13).

[3] Chatman-Ashley's objections to the guidelines included: (i) the inclusion of the amount of $5,167,118.15 billed to Medicare (Doc. 77, PSR, ¶ 22); (ii) the inclusion of an amount exceeding $1,000,000.00 regarding the loss to a Government health care program (*Id.* at ¶ 23); (iii) the allegation of an abuse of a position of public or private trust (*Id.* at ¶ 25); (iv) the offense level subtotal (*Id.* at ¶ 27), for the reasons stated in objections to 22, 23, ands 25; and (v) the offense level subtotal (*Id.* at ¶ 30) for the reasons stated in objections to paragraphs 22, 23, 25, and 27.

at the sentencing hearing on September 2, 2025, and considerable argument and discussion was devoted to the issue of the calculation of intended loss. After considering the parties' arguments, the Court overruled Chatman-Ashley's objection on this point, to which defense counsel noted Petitioner's objection for the record. [Doc. 105, p. 14]. The Court then overruled all of the remaining objections. Despite a guideline imprisonment range of 63 months to 78 months, Chatman-Ashley was sentenced to a term of imprisonment of 18 months on each count — a downward variance — to run concurrently, to be followed by a term of 3 years of supervised release. She was also ordered to pay restitution in the amount of $2,291,587.26. [Doc. 84].

On September 16, 2025, Chatman-Ashley appealed her conviction to the United States Court of Appeals for the Fifth Circuit. [Doc. 87]. Thereafter, on September 30, 2025, she filed a Motion for Reconsideration of Judgment, [Doc. 89], which this Court denied. [Doc. 90]. On October 14, 2025, the Fifth Circuit dismissed her appeal for want of prosecution because Chatman-Ashley failed to timely pay the filing fee, order a transcript, and make financial arrangements with a court reporter. [Doc. 91]. The Fifth Circuit docket sheet for the Petitioner's appeal shows Harold Dewey Register, III, appeared as counsel of record on appeal. [Doc. 106-1].

On January 29, 2026, the defendant filed a *pro se* Motion to Reinstate her appeal [Doc. 94], which this Court denied on February 12, 2026. [Doc. 97]. On March 16, 2026, Chatman-Ashley filed a *pro se* Motion to Reinstate Appeal and Recall Mandate in the Fifth Circuit. [*Shanone Chatman-Ashley v. United States*, Case No.

25-30525, Doc. 11]. However, the Fifth Circuit docket sheet indicates that no action was taken on this motion, as it was not filed within 45 days of the dismissal of the Petitioner's case.

On August 11, 2026, Chatman-Ashley filed the instant Motion, requesting that the Court vacate, set aside, or correct her sentence. [Doc. 100]. In her Motion, Chatman-Ashley argues that Mr. Register was ineffective at trial and at sentencing, and that he failed to perfect an appeal. On August 12, 2026, the Court ordered the Government to respond to Defendant's Motion. [Doc. 101]. The Government's response was filed on October 8, 2026. [Doc. 106]. According to the Office of Probation, Chatman-Ashley began her term of supervised release on September 11, 2026.

All issues having been fully briefed, the Motion is ripe for review.

## LAW AND ANALYSIS

### I. 28 U.S.C. § 2255 Standard

Chatman-Ashley seeks relief pursuant to 28 U.S.C. § 2255. That section provides, as relevant here:

> (a) A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a). Section 2255 post-conviction relief is reserved for errors of constitutional dimension and other injuries that could not have been raised on direct

appeal and, if left unaddressed, would result in a complete miscarriage of justice. *United States v. Cervantes*, 132 F.3d 1106, 1109 (5th Cir. 1998); *United States v. Payne*, 99 F.3d 1273, 1281 (5th Cir. 1996).

Although § 2255 proceedings are subject to certain procedural limitations, claims alleging ineffective assistance of counsel under the Sixth Amendment are properly raised in a collateral proceeding under § 2255. *Massaro v. United States*, 538 U.S. 500, 504, 123 S. Ct. 1690, 155 L. Ed. 2d 714 (2003). Such claims are analyzed under the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To prevail, a movant has the burden of showing: (1) his counsel's performance was deficient, and (2) the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 689–94, 104 S. Ct. 2052.

To establish deficient performance, a movant must prove that his counsel's assistance fell "below an objective standard of reasonableness." *United States v. Conley*, 349 F.3d 837, 841 (5th Cir. 2003), *quoting Strickland*, 466 U.S. at 688, 104 S. Ct. 2052. In other words, he must show his "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *United States v. Lincks*, 82 F.4th 325, 330–31 (5th Cir. 2023). When assessing whether an attorney's performance was deficient, the court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *United States v. Willis*, 273 F.3d 592, 598 (5th Cir. 2001), *citing Strickland*, 466 U.S. at *Id.* at 689. "[T]o establish prejudice, [the movant] 'must show that there is a reasonable probability that, but for counsel's unprofessional

errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Wiggins v. Smith*, 539 U.S. 510, 534, 123 S. Ct. 2527, 156 L. Ed. 2d 471 (2003), *quoting Strickland*, 466 U.S. at 694. Finally, the movant must satisfy both prongs of the *Strickland* test. *United States v. Lincks*, 82 F.4th 325, 330 (5th Cir. 2023) ("A failure to establish either prong defeats the claim.").

Finally, although courts liberally construe the pleadings of *pro se* litigants and apply less stringent standards to the briefings of *pro se* parties than to those represented by counsel, *pro se* parties must nevertheless still brief the issues. *Grant v. Cuellar*, 59 F.3d 523, 524 (5th Cir. 1995). Mere conclusory allegations are insufficient to raise a constitutional issue and *pro se* litigants are not absolved of the need to advance their own legal and factual analysis. *See United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1989) (*per curiam*); *see also Oliver v. Bankfirst*, 552 F. App'x 357, 357 (5th Cir. 2014) (*per curiam*).

**A. Trial Ineffective Assistance Claims**

Chatman-Ashley argues that counsel was ineffective during the trial phase because he made few objections and failed to challenge the expert testimony of the Government's expert, Dr. Seth Rosenzweig. She does not, however, identify any objections Mr. Register should have raised or explain how he could have successfully challenged the expert's testimony, either before or during trial. Moreover, the four-day trial record reflects substantial advocacy by Mr. Register on Chatman-Ashley's behalf. Accordingly, Chatman-Ashley fails to demonstrate that counsel's

performance was objectively unreasonable or that any alleged deficiency prejudiced her.

**B. Sentencing Ineffective Assistance Claims**

Chatman-Ashley contends that her attorney was ineffective for failing to investigate the factual basis of the PSR; failing to support her PSR objections with evidence; and failing to object to the restitution calculations or guideline enhancements, all of which increased her guideline range. She also argues that her attorney failed to preserve her PSR objections for appeal.

Again, Chatman-Ashley fails to identify any specific objections counsel should have raised that were not raised. The record, moreover, contradicts her assertions: defense counsel raised 11 objections to the PSR and objected to the Court's ruling, as reflected in the sentencing transcript. [Doc. 105, p. 14]. The record also demonstrates that defense counsel advocated effectively on Chatman-Ashley's behalf. Mr. Register filed a presentence memorandum, wherein he argued for home incarceration, [Doc. 82], and argued extensively at the sentencing hearing, particularly with respect to the issue of the calculation of intended loss. [Doc. 105, pp. 3-14]. Mr. Register also specifically argued against the amount of restitution that was ultimately ordered and was overruled. *Id.* at pp. 22-26. And Chatman-Ashley was sentenced to 18 months, a downward variance from her guideline range. Considering the foregoing, and particularly in light of the sentence imposed, Chatman-Ashley has not shown a reasonable probability that any additional objections would have resulted in a more

favorable sentence. She therefore fails to establish either deficient performance or prejudice under *Strickland*.

**C. Failure to Perfect Appeal**

Finally, Chatman-Ashley contends that Mr. Register failed to perfect an appeal on her behalf. She argues that he filed a Notice of Appeal on September 16, 2025, but that he failed to pay the filing fee, file an IFP application, order transcripts, and make financial arrangements with the court reporter. She further argues that the Fifth Circuit's resulting dismissal of her appeal prejudiced her.

But Chatman-Ashley's claims are directly contradicted by Mr. Register, who filed an Affidavit stating that he and Chatman-Ashley engaged in a text message conversation wherein she specifically asked him *not* to file an appeal, as follows:

> Ms. Chatman-Ashley: The letters will be coming soon also I would like to request a transcript of my sentence hearing I was told I can get a copy of it.
>
> Mr. Register: Ok yes maam. As far as the transcript, that would be something that would have to be requested from the [Clerk's] office themselves once they have completed it. It usually takes about 2 weeks.
>
> Ms. Chatman-Ashley: Ok so u request or I do?
>
> Ms. Chatman Ashley: I also will not be filing no appeal I don't want no appeal thank you.
>
> Mr. Register: Are you sure? I ask because if you bring the letters, the only reason I was asking for the letters is to possibly file a Motion to Reconsider his (sic) sentence. If you didn't want to do an appeal, then I am unsure about your thoughts on the Motion to Reconsider. As far as the appeal, if you waive your rights to an appeal, you can never get those rights back once the 14 days pass, absent exceptional circumstances.
>
> Ms. Chatman-Ashley: I thought that was two different entity's [sic]? So the motion to reconsider sentencing is still an appeal?

> Mr. Register: No maam, they are different. I just wanted to be sure that you knew what you were doing/requesting.
>
> Ms. Chatman-Ashley: I just want the motion to reconsider home confinement and drop that price to pay back even the owners didn't have to pay back that much and they well Mrs. frame stuff [sic] was over 60 million dollars.
>
> Mr. Register: Ok. I understand.
>
> Ms. Chatman-Ashley: Don't [sic] filing appeal if we lose again can make things even worse than what I got on Tuesday.
>
> Mr. Register: It is possible as far as the appeal that it could be overturned, I can't answer that question directly because I won't have any idea on how the Judges would rule on an appeal.

[Doc. 106-2]. Despite the foregoing, Mr. Register attests that, out of an abundance of caution, and in the event Chatman-Ashley changed her mind, "an appeal was filed."[4]

An attorney's failure to file a requested appeal is *per se* ineffective assistance of counsel. *See Roe v. Flores–Ortega,* 528 U.S. 470, 483–86, 120 S. Ct. 1029, 145 L. Ed. 2d 985 (2000). In such cases, "[c]ounsel's failure to [file an appeal] cannot be considered a strategic decision; filing a notice of appeal is a purely ministerial task, and the failure to file reflects inattention to the defendant's wishes." *Roe*, 528 U.S. at 477. Conversely, the *Roe* court explained that, "[a]t the other end of the spectrum,

---

[4] Prior to filing its response to the instant Motion, the Government sought an order from this Court finding that Chatman-Ashley had waived her attorney-client privilege by filing the instant Motion. The Court granted that motion on August 31, 2026. [Doc. 104]. *See United States v. Ballard*, 779 F.2d 287, 292 (5th Cir. 1986) (holding that an attorney may reveal otherwise privileged communications from his client to address charges of improper conduct without violating either the ethical rules of confidentiality or attorney-client privilege); *Laughner v. United States*, 373 F.2d 326, 327 (5th Cir. 1967) ("[W]here, as here, the client alleges a breach of duty to him by the attorney, we have not the slightest scruple about deciding that he thereby waives the privilege as to all communications relevant to that issue.").

a defendant who explicitly tells his attorney *not* to file an appeal plainly cannot later complain that, by following his instructions, his counsel performed deficiently." *Id., citing Jones v. Barnes,* 463 U.S. 745, 751, 103 S. Ct. 3308, 77 L. Ed. 2d 987 (1983) (accused has ultimate authority to make fundamental decision whether to take an appeal).

Here, the record establishes that Chatman-Ashley expressly instructed Mr. Register not to file an appeal, as reflected in the text-message exchange between them that Mr. Register provided under oath. And even though Mr. Register filed a notice of appeal to preserve her right to appeal in the event she changed her mind, Chatman-Ashley does not establish that she subsequently instructed Mr. Register to pay the filing fee, order transcripts, or make financial arrangements with the court reporter. Accordingly, she has not demonstrated that Mr. Register acted contrary to her wishes or otherwise performed deficiently. Her claim of ineffective assistance of counsel based on the failure to pursue an appeal is, therefore, without merit and must be denied.

## CONCLUSION

Therefore, for the reasons stated herein,

IT IS HEREBY ORDERED that Petitioner's MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE UNDER 28 U.S.C. § 2255 [Doc. 100] is DENIED. A separate judgment is entered herewith.

IT IS FURTHER ORDERED, under 28 U.S.C. § 2253(c)(2) and Rule 11(a) of the Rules Governing Section 2255 Proceedings, a Certificate of Appealability is DENIED.

THUS, DONE AND SIGNED in Chambers on this 30th day of October 2026.

DAVID C. JOSEPH
UNITED STATES DISTRICT JUDGE